UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00570-MOC

| | |
|---|---|
| **CARLY SMITH,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OF DECISION |
| ) | and |
| Vs. ) | ORDER |
| ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

### FINDINGS AND CONCLUSIONS

**I.**    **Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision

affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner").  Thereafter, plaintiff timely filed this action.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth.  Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra.  Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence.  Hays v. Sullivan, supra.

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely considered the decision of the ALJ in light of the record, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The court finds that the final decision is supported by substantial evidence.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

- a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

- b. An individual who does not have a "severe impairment" will not be found to be disabled;

- c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.  If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

   e.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b) - (f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

### C. The Administrative Decision

With an amended alleged onset date of April 1, 2011, the issue before the ALJ was whether plaintiff was disabled between the alleged onset date and the date of decision, April 20, 2012.

At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found that plaintiff's complaints of "fibromyalgia, chronic fatigue syndrome, multiple sclerosis, migraines, obesity, post-traumatic stress disorder [] depression, and anxiety" amounted to severe impairments. At step three, the ALJ determined plaintiff had no impairment or combination of impairments that met or medically equaled any impairments in the listings. It was also during the third step that the ALJ concluded that plaintiff suffered from moderate social and concentration

difficulties at step three under Listing 12.00, paragraph B. The ALJ next assessed plaintiff's residual functional capacity and found she could do medium, unskilled work with limited public interaction. After discussing the evidence, the ALJ found that plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's testimony regarding the degree of her symptoms was not fully credible. The ALJ went on to explain why he did not fully credit such testimony. At step four, the ALJ found Plaintiff could not perform any past relevant work as an office worker or administrative assistant. At step five, however, the ALJ applied the Medical-Vocational Guidelines (the "Grids") and found that plaintiff could do certain jobs existing in significant numbers in the national economy. The ALJ found plaintiff not disabled between April 1, 2011, and April 20, 2012.

**D. Discussion**

**1. Plaintiff's Assignments of Error**

Plaintiff has made the following assignments of error: [1]

I. The ALJ erroneously relied on the grids in this case, failing to properly consider Smith's non-exertional impairments and failing to consider Smith's limitations in her ability to perform a full range of medium, unskilled work. Can a decision that is based on improper use of the medical-vocational grids stand?

---

[1] Counsel for plaintiff is to be commended on the organization and clarity of his brief.

II. The RFC assessment must be a reasoned assessment of all of the relevant evidence. The ALJ here failed to properly evaluate all of Smith's impairments. Is a decision based upon an incomplete and inaccurate assessment of a claimant's RFC supported by substantial evidence?

Plaintiff's assignments of error will be discussed seriatim.

## 2. First Assignment of Error: Use of the Grids

Plaintiff first contends that the ALJ committed an error of law by applying the Grids at the fifth step of the sequential evaluation process to direct a finding of not disabled. Instead, she argues, the ALJ was obligated to prove the existence of jobs she could perform by posing a properly constructed hypothetical to Vocational Expert ("VE"), who could then opine what, if any, jobs she could perform based on her limitations. Plaintiff contends that employment of a VE was required because her non-exertional impairments prevented her performing a full range of medium, unskilled work.

In Heckler v. Campbell, 461 U.S. 458, 470 (1983), the United States Supreme Court upheld the Commissioner's promulgation of the Medical-Vocational Guidelines for use at the fifth step of the sequential evaluation process and determined that, in appropriate cases, the Commissioner need not introduce evidence of specific available jobs. The Court of Appeals for the Fourth Circuit has subsequently held that the Medical-Vocational Guidelines may be used

to direct a finding of either "disabled" or "not disabled" in cases involving exertional limitations. Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989). The Fourth Circuit has also held that the mere presence of nonexertional limitations does not, *per se*, preclude application of the Medical-Vocational Guidelines as nonexertional limitations rise to the level of nonexertional impairments and preclude the use of the guidelines only when the limitations are significant enough to prevent a wide range of gainful employment at the designated level. Id. Pain can be either exertional, nonexertional, or a combination thereof. Id.; see also Gory v. Schweiker, 712 F.2d 929, 931 (4th Cir. 1983) (the disability claimant's complaints of pain and leg swelling were only exertional limitations). The presence of pain does not necessarily preclude utilization of the Medical-Vocational Guidelines to direct a finding of not disabled.

Likewise, the purpose of bringing in a VE is to assist the ALJ in determining whether there is work available in the national economy which this particular plaintiff can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, Chester v. Mathews, 403 F. Supp. 110 (D.Md. 1975), and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.

Stephens v. Secretary of Health, Education and Welfare, 603 F.2d 36 (8th Cir. 1979).

The ALJ concluded plaintiff could do medium unskilled work with limited public contact. Noting that the Grids account for unskilled work, and that unskilled work normally involves working with things, not people, the ALJ concluded that the grids applied. Applying Grid Tule 203.9, the ALJ concluded plaintiff was not disabled.

"[N]ot every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." Walker, 889 F.2d at 49. First, the ALJ specifically held that plaintiff suffered from a non-exertional limitation (not an impairment) that required her work to be with "limited public contact." The ALJ reasoned, unskilled work usually involves working with things and not the public, Tr. at 43, a finding which finds substantial support in the regulations and case law within the Fourth Circuit. Scott v. Colvin, 2013 WL 3927607, at *6 (W.D.N.C. July 29, 2013); Cheeks v. Astrue, 2010 WL 2653649, at *5 (E.D. Va. June 30, 2010); SSR85-15.

Plaintiff has also argued that because the ALJ determined at step three that she suffered moderate social and concentration difficulties under Listing 12.00,

paragraph B, these additional non-exertional limitations which required employment of a VE at step five rather than reliance on the Grids.

This argument goes astray when it assumes that a step three Listing 12.00 paragraph B analysis is identical to the Residual Functional Capacity ("RFC") analysis at step four.

> It is well established that the paragraph B criteria used in determining whether a claimant meets or equals a listed impairment are not an RFC assessment.

Charlton v. Comm'r of Social Sec., 2013 WL 5806169, at *8 (W.D. Mich. Oct. 29, 2013) (citations and quotation marks omitted). Put simply, a paragraph B analysis at step three addresses global limitations, while RFC analysis concerns only work limitations. Plaintiff's reliance on Cain v. Astrue, 2009 WL 3698112, at *4 (D.S.C. Nov. 2, 2009) is misplaced, as the part of the opinion relied on was erroneously decided as later recognized by the district court in South Carolina. Martin v. Astrue, 2012 WL 4479280, at *13–14 (D.S.C. July 27, 2012).

The ALJ was not obligated to bring in a VE and properly relied on the Grids in finding plaintiff not disabled. In addition, there was no error in the RFC determination as it was unaffected by the Listing 12.00 paragraph B determination. Finding the ALJ's determination to be fully supported by substantial evidence and as a matter of law, the first assignment of error is overruled.

### 3. Second Assignment of Error: RFC

In the second assignment of error, plaintiff takes issue with the thoroughness of the RFC assessment, calling into question the ALJ's evaluation of her impairments and her testimony concerning the impact of those impairments on her ability to work.

The ALJ is solely responsible for determining the Residual Functional Capacity (hereinafter "RFC") of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

When an ALJ finds at least one severe impairment, all impairments, both severe and non-severe, are considered in assessing a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2); SSR 96-8p. As the ALJ found that plaintiff had other severe impairments, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." Pompa v. Comm'r of Social Security, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003). In

order for an impairment to be severe it must significantly limit a Plaintiff's ability to perform basic work activities. See 20 C.F.R. § 404.1520(c). Here, plaintiff has failed to identify how any of the impairments she contends were severe resulted in work-related limitations greater than those found by the ALJ during the relevant time period.

First, the ALJ found plaintiff's testimony less than fully credible. In Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> it is well settled that: "the ALJ is required to make credibility determinations--and therefore sometimes make negative determinations-- about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

Id., (quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)). Here, the ALJ satisfied the duty of explanation by noting the inconsistencies in plaintiff's statements, reports of daily activities, statements that she left work in 2009 due to a layoff, statements that she thereinafter collected unemployment (which is inconsistent with a representation of disability), and reports and records from her own physicians. The defendant has provided a

comprehensive list of the inconsistencies with references to the ALJ's decision and the corresponding part of the administrative record where the inconsistency is found.  See Commissioner's Brief (#15-1), at 9-10.

Plaintiff also argues that the ALJ improperly discredited her testimony based on a finding that the medical evidence did not support her disability claim based on fibromyalgia.  She argues that because that condition does not result in clinical evidence, it was improper to discredit her testimony on that basis.  While plaintiff is correct that fibromyalgia's symptoms are entirely subjective, to wit, a diagnosis relies on patient reports of pain, stiffness, and fatigue, Sarchet v. Chater, 78 F.3d 305, 306–307 (7th Cir. 1996), this does not mean that there are no tests that can assist a physician in diagnosing such condition, including a "tender points" test where a patient expresses pain in response to the doctor pressing certain locations.  Id.  Courts in the Fourth Circuit have expressly considered plaintiff's argument and rejected it, holding that it is appropriate to consider clinical evidence when considering the impact of a claimant's fibromyalgia on her ability to work.  Glaser v. Astrue, 2013 WL 1332064, at *9–11 (E.D. Va. Mar. 29, 2013); Beaver v. Astrue, 2007 WL 3146526, at *7 (W.D. Va. Oct. 24, 2007); Simonin v. Astrue, 2012 WL 988049, at *9–10 (D.S.C. Feb. 27, 2012).

In this case, the ALJ did not just rely on the lack of clinical support for plaintiff's fibromyalgia and other impairments in making his credibility determination; instead, he also relied on plaintiff's report of daily activities, her reason for leaving her previous job, her collection of unemployment benefits, her ability to care for herself and her infant child, the effectiveness of prescribed medication *when* she took it, all among other factors. In accordance with the teachings of the Court of Appeals for the Fourth Circuit in <u>Gross v. Heckler</u>, 785 F.2d 1163 (4th Cir. 1986), the court finds that the ALJ properly considered plaintiff's activities of daily living and that plaintiff's assignment of error is without merit. <u>See</u> <u>also</u> 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i). The nature of a claimant's symptoms, the effectiveness of any medication she is taking, and her daily activities are all relevant factors when considering subjective symptoms such as pain. <u>Id.</u>

Plaintiff also assigns error to the fact that the ALJ did not provide a function-by-function discussion in support of his RFC determination. The record does not support such argument as the ALJ specifically summarized several pages of analysis, as follows:

> In sum, the claimant has been limited to medium work due to the pain and occasional numbness and decreased range of motion caused by her physical impairments. In addition, the claimant's mental limitations cause her to have moderate limitations in social

> interaction and the ability to maintain concentration, persistence, and pace. Thus, the claimant is also limited to unskilled work requiring only limited public interaction.

Tr. at 42. The ALJ described his RFC assessment function-by-function and the court overrules plaintiff's assignment of error.

Next, plaintiff's argument that the ALJ improperly relied on the opinions of state agency physicians because the record that they reviewed was incomplete does not entitle plaintiff to remand. As this court earlier explained:

> The fact that the state agency physician did not have access to the entire evidentiary record—because the record was incomplete at the time of the assessment—is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination.

Thacker v. Astrue, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011). Further, the fact that the state-agency physicians opinions covered a time period that predated plaintiff's alleged date of onset is directly attributable to plaintiff's amendment of the alleged onset date at the hearing, as before that date plaintiff had alleged onset as of September 2009. Clearly, plaintiff changed her alleged onset date at the hearing based on the problem presented by her collection of unemployment benefits after September 2009. Thus, the state agency opinions before the ALJ at the hearing, dating from 2010, were well within the original

period of alleged disability. Plaintiff has failed to show this court that her symptoms were different during the period considered.

Finally, plaintiff's argument that the ALJ "mischaracterized" the evidence concerning plaintiff's daily activities is wholly without support. Here, the ALJ specifically discussed the testimony plaintiff gave at the hearing and statements she provided to others. For example, several months before the hearing, plaintiff reported to her physical therapist that she was the sole caregiver to her infant, but testified at the hearing that she was helped by a nurse. Tr. at 41. He determined that her credible reports and testimony as to daily activities were not consistent with complete disability. Id. Such consideration of daily activities is precisely the type of evaluation required under current case law. In considering an almost identical method of evaluating pain in Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994), the late K. K. Hall, United States Circuit Judge, in announcing and concurring in the judgment of the Court of Appeals for the Fourth Circuit, held:

> This refreshing mode of analysis is precisely what I believe our cases have been striving for. The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.

Id., at 927. In accordance with Mickles, the ALJ properly discredited plaintiff's minimization of her activity at the hearing and instead relied on contemporaneous

reports of daily activities as well as reports she made to her medical care givers. Substantial evidence supports the ALJ's RFC determinations.

### E. Conclusion

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2) the plaintiff's Motion for Summary Judgment (#13) is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment (#15) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: May 23, 2014

Max O. Cogburn Jr.
United States District Judge